IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 21-cv-02043-REB-MDB

EVANA RICHARDSON,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

## ORDER

**Blackburn, J.**

This matter is before me on **Defendant's Motion for Determination of Question of Law** [#30],[1] filed June 10, 2022. By this motion, defendant Allstate Fire and Casualty Insurance Company ("Allstate") asks the court to determine choice-of-law issues governing resolution of the claims raised in this lawsuit. Having considered the arguments advanced, authorities cited, and evidence adduced by the parties in their papers, I find and conclude as set forth herein.

This case arises from an October 2017 auto accident which occurred in Colorado Springs, Colorado, involving plaintiff Evana Richardson. At the time of the accident, Ms. Richardson was driving a 2009 Honda Odyssey which was insured under a policy issued by Allstate to Ms. Richardson's ex-husband, Jacek Wojtkiewicz. The named insureds on the policy were Mr. Wojtkiewicz and his mother, whose listed address on

---

[1] "[#30]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

the policy was in Mt. Prospect, Illinois. Ms. Richardson was not listed as either a named insured or an additional driver on the policy. Instead, Ms. Richardson claims she and Mr. Wojtkiewicz had a private understanding whereby he would secure insurance for the car, and she would reimburse him the cost of the monthly premium.

After Ms. Richardson settled with the other driver and her insurance company, she filed claims for medical payments and underinsured motorist ("UIM") benefits from Allstate under the policy. This case, alleging claims for breach of contract and statutory and common law bad faith under Colorado law, followed. Allstate now seeks a determination that the law of Illinois, rather than Colorado, applies to those claims.

As a federal court is sitting in diversity jurisdiction, I begin by applying the conflict-of-law rules of the forum state. ***Klaxon Co v. Stentor Electrical Manufacturing Co.***, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). Any conflict of laws analysis begins, perforce, with a determination whether a conflict actually exists. ***SELCO Community Credit Union v. Noodles & Co.***, 267 F.Supp.3d 1288, 1292 (D. Colo. 2017). "If there is no such conflict, there is no choice of law issue, and the forum state's law applies." ***Id.*** Moreover, "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. d.

Allstate has elided this critical first step in its briefing. Nevertheless, the court perceives outcome determinative conflicts between Colorado and Illinois law as to Ms. Richardson's breach of contract claims. Colorado courts recognize "a complete range

of non-economic damages . . . when an insurer has willfully and wantonly breached its contract with an insured, so long as the damages are foreseeable at the time of contracting and the damages are a natural and probable result of the breach." ***Giampapa v. American Family Mutual Insurance Co.***, 64 P.3d 230, 238 (Colo. 2003). ***See also Decker v. Browning-Ferris Industries of Colorado, Inc.***, 931 P.2d 436, 448 (Colo. 1997) ("Damages for 'mental suffering' are recoverable on a breach of contract claim when the breach is accompanied by willful and wanton conduct and when the damages are a natural and proximate consequence of such conduct."). By contrast, although section 155 of the Illinois Code provides certain penalties for an insurer's vexatious or unreasonable refusal or delay in payment of claims, it otherwise preempts the field and precludes emotional distress damages. ***See, e.g.***, ***Emerson v. American Bankers Insurance Co. of Florida***, 585 N.E.2d 1315, 1320 (Ill. App. 1992); ***Calcagno v. Personalcare Health Management, Inc.***, 565 N.E.2d 1330, 1340 (Ill. App. 1991); ***Combs v. Insurance Co. of Illinois***, 497 N.E.2d 503, 508 (Ill. App. 1986); ***Trautman v. Knights of Columbus*** 460 N.E.2d 350, 353 (Ill. App. 1984).

Because there is an outcome determinative conflict as to Ms. Richardson's breach of contract claims, the court must engage in a choice-of-law analysis as to those claims. "[A] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules." ***Boyd Rosene & Associates, Inc. v. Kansas Municipal Gas Agency***, 123 F.3d 1351, 1352-53 (10th Cir. 1997) (citing ***Klaxon Co.***, 61 S.Ct. at 1021-22). Colorado applies the Restatement (Second) of Conflict of Laws to resolution of choice-of-law questions for both tort and

contract claims.  *See Wood Brothers Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979).  In general, "the objective of the Restatement (Second) is to locate the state having the 'most significant relationship' to the particular issue."  *Id.*

However, contractual choice-of-law provisions are generally enforced in Colorado.  *American Express Financial Advisors, Inc. v. Topel*, 38 F.Supp.2d 1233, 1238 (D. Colo. 1999).  "Under most circumstances, this is the court's first inquiry, and may obviate the need to consider which state has the most significant relationship to the transaction and the parties."  *Kipling v. State Farm Mutual Automobile Insurance Co.*, 159 F.Supp.3d 1254, 1266 n.3 (D. Colo. 2016).  *See also Murray v. Crawford*, 2009 WL 1837445 at *2 (D. Colo. June 26, 2009) ("Trumping the 'most significant relationship' test, however, is the overarching default position in a contract dispute that federal courts should apply the law chosen by the parties in their contract.").  When the parties to a contract have made an effective choice of law, the courts will follow section 187 of the Restatement, which provides in relevant part,

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of

4

> § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

**RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 187(2).[2]  Such an election is part of the policy of insurance here:

> This policy is issued in accordance with the laws of Illinois and covers property or risks principally located in Illinois. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Illinois.

(**Motion App.**, Exh. B at 14 (Allstate 3577).)

Attempting to avoid the obvious implications of this broad provision, Ms. Richardson advances several arguments, none of which have merit.  First, she asserts, curiously, that she cannot be bound by this provision because she was not a party to the contract.  Not only is this assertion clearly contrary to the allegations of her complaint (*see* **Complaint** ¶ 16 at 2, ¶ 33 at 3), but if true, it is unclear how Ms. Richardson believes she is entitled to recover under the contract.

Ms. Richardson next suggests she is a third-party beneficiary under the contract, yet she points to nothing in the terms of the contract or the surrounding circumstances which demonstrate the parties had the intent to make her a third-party beneficiary.

---

[2] As noted by the Seventh Circuit in *International Administrators, Inc. v. Life Insurance Co. of North America*, 753 F.2d 1373 (7th Cir. 1985):

> In applying this . . . rule, the court would not even appear to be enforcing the 'laws' of another jurisdiction than its own; it is merely enforcing the contract as made by the parties in accordance with its own system of law. . . . [T]he court of the forum would merely enforce its own law as to the making of contracts, recognizing and giving effect to bargains that parties are empowered by that law to make.

*Id.* at 1377 (quoting 6A **CORBIN ON CONTRACT** § 1446 (1962)).

5

*Genberg v. Porter*, 935 F.Supp.2d 1094, 1101 (D. Colo. 2013) (citing *Winter Park Real Estate & Investments, Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. App. 2007)), *aff'd in part, appeal dismissed in part*, 566 Fed. Appx. 719 (10th Cir. 2014). Nevertheless, even if she were a third-party beneficiary to the contract, she would be bound by its terms, *Northwest Parkway Public Highway Authority v. Bayerische HYOP–UND Vereinsbank AG*, 2010 WL 3155641 at *3 (D. Colo. Aug. 9, 2010), including the choice-of-law provision, *see Brown v. Fryer*, 2013 WL 1191405 at *2 (D. Colo. March 22, 2013).[3]

Undeterred, Ms. Richardson next invokes section 193 of the Restatement, which governs choice-of-law questions related to the validity and rights created by a casualty insurance contracts, including automobile liability policies. *See Keefner v. United States Fire Insurance Co.*, 1991 WL 2233 at *5-6 (D. Colo. 1991); *Ackerman v. Foster*, 974 P.2d 1, 3 (Colo. App. 1998), *as modified on denial of reh'g* (July 2, 1998). Pursuant to this section, "the law of the state in which the insured property, object or other risk is located normally governs issues concerning the validity or effect of the insurance contract." *Mitchell v. State Farm Fire & Casualty Co.*, 902 F.2d 790, 793 (10th Cir. 1990). "The location of the insured property is the most important factor in analyzing questions under Section 193." *Gahagen Iron & Metal Co. v. Transportation Insurance Co.*, 812 F.Supp. 1106, 1108 (D. Colo. 1992). Importantly, however, it is the *parties*' understanding as to the location of the insured risk *at the time the policy was*

---

[3] Ms. Richardson also claims she was a permissive user under the policy. (*See* **Motion App.**, Exh. B at 19 (Allstate 3582) & 25 (Allstate 3588) (defining "insured persons" to include permissive users).) She does not explain, however, how that designation exempts her from the effect of the contractual choice-of-law provision. It does not.

*issued* which is determinative under section 193. *Id.* ("The Court will not use hindsight in determining what the parties understood to be the principal location of the insured risk.").

Here, Ms. Richardson suggests Allstate should have known that the insured vehicle was located in Colorado because the company previously sent correspondence regarding other insurance policies to Mr. Wojtkiewicz in Colorado. (**See Resp. App.**, Exh. 2.) This argument is utter nonsense, on multiple levels. Factually, none of the documents Ms. Richardson appends to her response to establish this purported fact involve a contract of insurance relating to the 2009 Honda Odyssey, i.e., the insured risk.[4] In addition, the documents involve coverage issued to Mr. Wojtkiewicz in 2003 and 2006; the latest date shown on any of the documents appears on a receipt for a premium payment in 2011. (*Id.*, Exh. 2 at 4.) It is unclear how Ms. Richardson believes Allstate could have known from this stale, unrelated evidence that the vehicle was located anywhere other than where Mr. Wojtkiewicz himself claimed he lived when he procured the policy.

Nor does Ms. Richardson offer any legal basis to support her suggestion that Allstate had a duty, despite the representations made in the contract of insurance, to determine where the vehicle was located. While it may be true that a VIN search would have shown that the vehicle was registered in Colorado at the time of the accident (a fact

---

[4] One of the documents relates to a policy of insurance issued to Mr. Wojtkiewicz on a 2001 Chrysler Town & Country. (**Resp. App.**, Exh. 2 at 1.) All the others appear to relate to a life insurance policy issued to Mr. Wojtkiewicz by American Heritage Life Insurance Company in which "Iwona Wojtkiewicz" is listed as the primary beneficiary. (*Id.*, Exh. 2 at 3, 5.) **See** Allstate Benefits, *Workplace Accessibility* ("Allstate Benefits is the marketing name used by American Heritage Life Insurance Company (Home Office, Jacksonville, FL), a subsidiary of The Allstate Corporation.") (available at: https://www.allstate.com/allstate-benefits/website-accessibility.aspx) (last accessed: October 12, 2022). Ms. Richardson does not elucidate under what theory or set of conditions a corporate defendant such as Allstate can be charged with knowledge possessed by an independent subsidiary.

which Ms. Richardson's evidence of such a search performed in 2022 does nothing to prove (*see* **Resp. App.**, Exh. 6 at 11-13)), she fails to provide any authority which imposes such a duty on insurers.  Likewise, it is not apparent why Ms. Richardson believes Allstate had any obligation to contact her to determine where the vehicle was located.  Indeed, there is no basis on which Allstate can be charged with contemporaneous notice that Ms. Richardson even existed, as she was neither a named insured, a designated additional driver (*see* **Motion App.**, Exh. B at 3-4 (Allstate 3566-3567), nor Mr. Wojtkiewicz's "resident spouse" (*see id.*, Exh. B at ¶ 7 at 20 (Allstate 3583) & ¶ 6 at 26 (Allstate 3589) (defining "you" under medical payments policy and motorists insurance policy, respectively, as including insured's resident spouse)).

      Accordingly, I find and conclude that Illinois law applies to Ms. Richardson's breach of contract claims.  Moreover, "[o]nce it has been determined that the law of a particular state governs the interpretation of an insurance contract, any statutory insurance claims that implicate performance of the contract must also be raised under the law of the controlling state."  ***Werden v. Allstate Insurance Co.***, 667 F.Supp.2d 1238, 1245 (D. Colo. 2009).  "[C]ourts within this District have followed this line of reasoning in concluding that the law applicable to a statutory bad faith claim turns on the substantive law applied to the interpretation of the subject insurance contract."  ***Duong v. State Farm Mutual Automobile Insurance Co.***, 2022 WL 4386003 at *5 (D. Colo. Sept. 22, 2022) (citing ***NBH Capital Finance v. Scottsdale Indemnity Co.***, 2022 WL 3597118 at *6 (D. Colo. March 30, 2022), and ***Williams v. Allstate Property & Casualty Insurance Co.***, 2020 WL 9432884 at *3 (D. Colo. Sept. 28, 2020)).  Thus, Ms.

Richardson's claims for statutory bad faith under sections 10-3-1115 and 10-3-1116, C.R.S., must be brought, it at all, under Illinois law as well.[5]

Ms. Richardson counters that to do so would run counter to a fundamental policy of Colorado law.  *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (b).  Yet she does little to explore the implications of this argument, probably because it does not withstand closer scrutiny.  The mere fact that Colorado has enacted a statute prescribing unfair practices in the business of insurance is not in itself sufficient to demonstrate these provisions express a fundamental policy of the state:  "Since every law is an expression of the public policy of the state, some higher threshold is needed to prevent the forum's law from being applied in every case."  **Tucker v. R.A. Hanson Co.**, 956 F.2d 215, 218 (10th Cir. 1992); *see also* **Saveraid v. State Farm Insurance Co.**, 597 Fed. Appx. 492, 495 (10th Cir. 2015) ("Mere differences among state laws should not be enough to invoke the public policy exception.  Otherwise, the forum law would always apply unless the foreign law were identical, and the exception would swallow the rule.") (internal citations and quotation marks omitted).  Instead, "[t]o succeed on a claim that the chosen law contravenes a fundamental policy of the forum state, the policy must be a substantial one."  **Hansen v. GAB Business Services, Inc**., 876 P.2d 112, 113 (Colo. App. 1994).  In addition, "the 'fundamental policy' prong requires [the court] to look to whether the *application* of another state's law would violate Colorado's policy."  **King v.**

---

[5] Although the standards which govern first-party common law bad faith claims in Colorado are codified within the Unfair Claims Settlement Practices Act, *see* §10-3-1113, C.R.S.; **Kisselman v. American Family Mutual Insurance Co.**, 292 P.3d 964, 973 (Colo. App. 2011), Allstate does not claim, and I have found no authority suggesting, such claims as "statutory" in the sense contemplated by this line of authority.

***PA Consulting Group, Inc.***, 485 F.3d 577, 586-87 (10th Cir. 2007) (emphasis in original).  ***See also Jacquat v. Hub International Insurance Services, Inc.***, 2010 WL 9568710 at *4 (D. Colo. June 15, 2010) ("[A]pplication of another state's law must lead to a contrary result in violation of the forum state's policy.").

Ms. Richardson does not show that application of Illinois law would violate the policy choices expressed in Colorado's Unfair Claims Settlement Practices Act.  Indeed, she does not even identify such a law, although in fact, Illinois does have one.  ***See Western Howard Corp. v. Indian Harbor Insurance Co.***, 2011 WL 2582353 at *3 (N.D. Ill. June 29, 2011)  ("The Consumer Fraud Act applies to 'unfair practices in adjusting insurance claims.'") (quoting ***Casualty Insurance Co. v. Hill Mechanical Group***, 753 N.E.2d 370, 376 (Ill. App. 2001)).  Even if there were no a comparable cause of action under Illinois law, "merely not recognizing a claim or theory of recovery is not a substantial conflict which warrants a court's rejection of a contractually designated choice of law."  ***Hansen***, 876 P.2d at 113.  Moreover, "Colorado's interest in the validation of agreements and protection of the parties' expectations is a central policy underlying the law of contracts."  ***Wood Bros. Homes***, 601 P.2d at 1373.  ***See also Topel***, 38 F.Supp.2d at 1239.  Given all these considerations, I find and conclude that Illinois law likewise applies to Ms. Richardson's statutory claims for bad faith breach of the insurance policy.[6]

This determination leaves only Ms. Richardson's claims for common law bad

---

[6] This determination perforce requires dismissal of Ms. Richardson's Second and Fifth Claims for Relief under these Colorado statutes.

faith.[7]  Here again, although Allstate has not addressed the issue, there is at least one outcome determinative conflict between a statutory claim of vexatious and unreasonable conduct under Illinois law and a common law bad faith claim under Colorado law: Whereas attorney fees are available as part of a plaintiff's recovery under the former, *see id*., they generally are not under the latter, *see Ermentraut v. State Farm Fire & Casualty Co.*, 2016 WL 9735723 at *6 (D. Colo. Sept. 26, 2016) (citing *Bernhard v. Farmers Insurnace Exchange*, 915 P.2d 1285 (Colo. 1996)).  *See Nero v. American Family Mutual Insurance Co.*, 2013 WL 5323191 at *2 (D. Colo. Sept. 23, 2013) (outcome determinative conflict found where choice of law would impact request for attorney fees).  *See also Flaherty v. Brighthouse Life Insurance Co.*, 2021 WL 7368167 at *5 (D. Colo. March 31, 2021) (outcome determinative conflict existed where law of one state provided for punitive damages where law of competing jurisdiction did not); *Iskowitz v. Cessna Aircraft Co.*, 2010 WL 3075476 at *3-4 (D. Colo. Aug. 5, 2010) (outcome determinative conflict based on differences between statutory caps on non-economic damages between various implicated jurisdictions).  Because an outcome determinative conflict exists, I must consider which state's law should apply.

A common law claim of bad faith under Colorado law is a tort claim, *Goodson v.*

---

[7]  I note that other jurisdictions appear to apply contractual choice-of-law provisions to non-statutory tort claims in certain circumstances.  *See, e.g.*, *Nero v. American Family Mutual Insurance Co.*, 2013 WL 5323191 at *3 (D. Colo. Sept. 23, 2013) (applying Illinois choice-of-law rules and noting that courts in the Seventh Circuit apply a contractual choice-of-law provision to tort claims when either (1) the contract makes clear that such was the parties' intent; *see Kuehn v. Childrens Hospital, Los* Angeles, 119 F.3d 1296, 1302 (7th Cir.1997); or (2) the tort claim is "dependent" on the contract insofar as it either: (a) alleges a wrong based on the construction and interpretation of the contract; (2) is closely related to the parties' contractual relationship; or (3) could not exist without the contract, *Amakua Development LLC v. Warner*, 411 F.Supp.2d 941, 955 (N.D. Ill. 2006)).  Although the exceedingly broad choice-of-law provision contained in the policy likely would qualify under either of these rubrics, because Allstate has presented neither argument nor authority on this point, I do not consider the matter further.

*American Standard Insurance Co. of Wisconsin*, 89 P.3d 409, 416 (Colo. 2004) (citing *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984)), as to which the most significant relationship test applies, *Boone v. MVM, Inc.*, 572 F.3d 809, 812 (10th Cir. 2009) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509-10 (Colo. 2007)).  That test is set forth in section 145 of the Restatement, which provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

As to the first factor, the place of injury often "plays an important role in the selection of the state of the applicable law in the case" because "persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. e.  Allstate acknowledges that to the extent Ms. Richardson can establish it acted

in bad faith in adjusting her insurance claim, her injury occurred in Colorado.[8]

Allstate initially insisted the place where the conduct causing the injury occurred was Illinois, where the adjuster handling Ms. Richardson's claim was located. However, during her deposition, the adjuster testified that, at least at some point, a Colorado adjuster also was involved in handling the claim (*see* **Resp. App.**, Exh. 3 at 21-22), and Allstate presents nothing to refute the adjuster's recollection in this regard. Moreover, regardless where the adjuster handling the claim was located, the conduct of which Ms. Richardson complains was directed toward her in Colorado. This factor therefore favors Colorado, albeit only slightly.

At first blush, consideration of the third factor – the domicile, residence, nationality, place of incorporation, and place of business of the parties – is a wash. However, the relative importance of these contacts "varies with the nature of the interest affected:" Where the injury is personal in nature, consideration of domicile, residence, and nationality will predominate, whereas the place of business and of incorporation are more salient when the interest implicated is a business or financial one. **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 145, cmt. e. In light of the highly personal purposes

---

[8] I note that section 146 of the Restatement provides, generally, that in actions for personal injury, "the local law of the state where the injury occurred determines the rights and liabilities of the parties." **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 146. Some courts have found the mental distress occasioned by an insurer's bad faith refusal to pay benefits is a personal injury for purposes of invoking this section. *See* **Barten v. State Farm Mutual Automobile Insurance Co.**, 28 F.Supp.3d 978, 982 (D. Ariz. 2014) (citing **Bates v. Superior Court of State of Arizona In and For the County of Maricopa**, 749 P.2d 1367, 1370 (Ariz.1988)). Others have declined to so find. *See* **Vignola v. Gilman**, 854 F.Supp.2d 883, 887 (D. Nev. 2012) (finding claims for bad faith and unfair claims practices were not personal injury torts subject to section 146). Given that no Colorado court has applied section 146 in this manner, and that the scope of the section is expressly limited to "physical harm or mental disturbance, such as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another," **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** § 146, cmt. b, I am dubious that Colorado courts would adopt this position.

for which insurance generally is sought and insureds lack of bargaining power in securing insurance, *see Goodson*, 89 P.3d at 414, Colorado courts have been particularly solicitous to the interests of insureds, *see Trimble*, 691 P.2d at 1141.  I therefore find it appropriate to weight Ms. Richardson's domicile and residence more heavily than Allstate's place of incorporation and principle place of business in considering these claims.

Given that all these factors point more or less toward Colorado as the jurisdiction with the most significant relationship to Ms. Richardson's common law bad faith claim, it is hard to say the parties' relationship was centered anywhere other than Colorado. While Allstate's arguments in favor of the application of Illinois law to this claim harken back to the policy, its relationship with its insureds, and its ignorance of Ms. Richardson's interest at the time of the accident, that focus in misplaced.  This claim is concerned with Allstate's behavior toward Ms. Richardson after she filed a claim to benefits under the policy.  At that point, Allstate cannot have been unaware that Ms. Richardson was a Colorado resident making claims for an accident which occurred in Colorado involving a vehicle of which she was the primary driver and which was usually kept in Colorado.

Consideration of the section 6 factors does not change my conclusion.[9]  Although

---

[9] These are:

>(a) the needs of the interstate and international systems,
>(b) the relevant policies of the forum,
>(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>(d) the protection of justified expectations,
>(e) the basic policies underlying the particular field of law,
>(f) certainty, predictability and uniformity of result, and
>(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2).

these factors "are broad and vague, and thus provide little direction," *Price v. American Family Mutual Insurance Co., S.I.*, 2020 WL 948710 at *10 (D. Colo. Feb. 27, 2020), having considered them, I conclude that none points to a forum other than Colorado as having a more significant relationship to Ms. Richardson's bad faith claims. As the *Price* court noted, the fact that the defendant in that case knew it was dealing with a resident of the forum in adjusting the claim was the most salient consideration in concluding that forum's law should apply to a common law bad faith claim. *Id.*

**THEREFORE, IT IS ORDERED** as follows:

1. That the choice-of-law issues raised by and inherent to **Defendant's Motion for Determination of Question of Law** [#30], filed June 10, 2022, are resolved as follows:

   a. That Illinois law shall govern resolution of Ms. Richardson's claims for breach of contract (First and Fourth Claims for Relief);

   b. That because any statutory claims also must be brought under Illinois law, Ms. Richardson's Second and Fifth Claims for Relief alleging bad faith pursuant to §§10-3-1115 and 10-3-1116, C.R.S., are dismissed with prejudice; and

   c. That Colorado law shall govern resolution of Ms. Richardson's common law bad faith claims (Third and Sixth Claims for Relief); and

2. That at the time judgment enters, judgment with prejudice shall enter on behalf of defendant, Allstate Fire and Casualty Insurance Company, and against plaintiff, Evana Richardson, as to Ms. Richardson's Second and Fourth Claims for Relief

alleging claims under §§10-3-1115 and 10-3-1116, C.R.S.

Dated October 28, 2022, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge